Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Christopher Colt North (Pro Hac Vice Motion to be filed)
The Consumer & Employee Rights Law Firm, P.C.
5629 George Washington Memorial Hwy, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax: (757) 873-8375
*cnorthlaw@aol.com*

United States District Court
Eastern District of New York                                  1:20-cv-02215

| | |
|---|---|
| Janet Kyszenia, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Complaint |
| Ricoh USA, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Ricoh USA, Inc. ("defendant") manufactures, distributes, markets, labels and sells cameras, under the Pentax brand ("Product"), including but not limited to the Pentax K-30, Pentax K-50 and Pentax K-70 ("defective Pentax cameras").

2.      The defective Pentax cameras suffer from "exposure problems," also known as a "black picture problem" or an "aperture problem," causing the photographed image to be almost

completely dark so the imaged photograph is barely visible.

3.     These cameras, and others, manufactured by Pentax contain a design defect and/or manufacturing flaw which render a large percentage of them unfit for taking photographs, and render any accessories purchased with the camera, such as a lens or case, similarly useless.

4.     The problems Plaintiff experienced, along with thousands of other consumers, are chronicled at "Pentax K50 Dark Photos" through a Google search.

5.     The problems with Plaintiff's camera did not occur until the camera was out of warranty.

6.     Each of the above-identified three Pentax K models produces black pictures as the result of aperture issues.

7.     The foregoing problem renders the cameras virtually useless and, as a result, any attachments or accessories purchased along with the cameras are also useless.

Thousands of consumers have complained to Pentax about these problems to no avail.

Jurisdiction and Venue

8.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

9.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

10.    The typical camera at issue here costs approximately $450.00 and the associated attachments and accessories cost approximately $450.00, or $900.00 on average per sale.

11.    There have been substantially more than 12,000 of the aforesaid sales, yielding claims in excess of $5,000,000.00 in the aggregate.

12.    Plaintiff Janet Kyszenia is a citizen of New York.

13.    Defendant Ricoh USA, Inc. is an Ohio corporation with a principal place of business in Exton, Chester County, Pennsylvania and therefore is a citizen of Ohio and Pennsylvania.

14.    "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

15.    Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

16.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

17.    Plaintiff Janet Kyszenia is a citizen of Brooklyn, Kings County, New York.

18.    Defendant Ricoh USA, Inc. is an Ohio corporation with a principal place of business in Exton, Pennsylvania, Chester County.

19.    During the relevant statutes of limitations, plaintiff purchased the above-identified camera within her district and/or State for personal use.

20.    Plaintiff would buy the camera again if assured it did not experience the issues described above.

<u>Class Allegations</u>

21.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

22.    The proposed class consists of:

All residents of the United States and its territories or possessions who purchased a Pentax K-30, K-50 or K-70 model camera for personal use from December 7, 2014 through the present.

3

23. Plaintiff also brings this suit as a on behalf of sub-classes consisting of purchasers of the Products in New York and Virginia during the proposed class period.

24. The members of the class are so numerous that joinder is impracticable.

25. Defendant is one of the largest manufacturers of cameras in the world and sells many thousands of cameras annually in the United States through various retailers.

26. Plaintiff's claims are typical of the claims of the entire class because plaintiff purchased a defective Pentax camera.

27. Plaintiff will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

28. Plaintiff has no interests antagonistic to those of other class members.

29. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

30. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class, including, but not limited to:

    a. Whether the Pentax cameras are defective;

    b. How long the Defendant has known the cameras are defective;

    c. Whether the defects in the cameras constitute material facts that reasonable purchasers would have considered in deciding whether to purchase them;

    d. Whether the cameras possess material defects;

    e. Whether Defendant knew or should have known of the inherent defects of the cameras when they placed them in the stream of commerce;

    f. Whether Defendant concealed the defects from consumers;

g.  Whether the cameras are merchantable;

h.  Whether the cameras are fit for their intended use;

i.  Whether any accessories or attachments purchased with the cameras are useless;

j.  Whether Defendant was unjustly enriched by the sale of the defective cameras;

k.  Whether any false warranties, misrepresentations and material omissions by Defendant concerning their cameras caused class members financial damages; and

l.  Whether Defendant should be enjoined from further sales of the defective cameras.

31.   Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

32.   Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

33.   Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

34.   Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

<u>Negligent Misrepresentation and Negligence</u>

35.   Plaintiff incorporates by reference all preceding paragraphs.

36.   Defendant owed a duty to plaintiff and class members to design, manufacture,

produce, test, inspect, market, distribute, and sell the defective Pentax cameras with reasonable care and in a workmanlike fashion.

37.     Defendant breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the defective Pentax cameras.

38.     Defendant unreasonably failed to provide appropriate and adequate warnings and instructions about its defective Pentax cameras, and this failure was a proximate cause of the harm for which damages are sought.

39.     In addition, at the time the defective Pentax cameras left its control, Defendant knew, or in the exercise of reasonable care should have known, its defective Pentax cameras had exposure problems rendering them unfit to take photographs.

40.     And at the time the defective Pentax cameras left its control, Defendant knew, or in the exercise of reasonable care should have known, the defective Pentax cameras it designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, would fail to perform as intended.

41.     Defendant acted unreasonably in designing the defective Pentax cameras. Further, at the time the defective Pentax cameras left the control of Defendant, it unreasonably failed to adopt a practical, feasible and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented the exposure problems without substantially impairing the usefulness, practicality or desirability of the defective Pentax cameras.

42.     Furthermore, at the time the defective Pentax cameras left the control of Defendant, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a camera of this design.

43.     Defendant knew, or in the exercise of reasonable care should have known, that the

defective Pentax cameras had exposure problems rendering them unfit to take photographs.

44. Based on this knowledge, Defendant had a duty to disclose to plaintiff, and class members, the defective nature of the defective Pentax cameras.

45. Defendant had a further duty not to put the defective Pentax cameras on the market and has a continuing duty to replace its defective Pentax cameras, remove them from the market and seek a recall of them from consumers.

46. Defendant failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the defective Pentax cameras by, among other things, failing to design and manufacture the defective Pentax cameras in a manner to ensure that, under normal intended usage, they would not have exposure problems rendering them unfit to take photographs.

47. Defendant failed to exercise reasonable care in failing to warn, or to warn adequately and sufficiently, either directly or indirectly, plaintiff and class members of the defective Pentax cameras.

48. Defendant failed to exercise reasonable care when it knew of the defects of the defective Pentax cameras and actively concealed those defects from Plaintiff and class members.

49. Defendant failed to exercise reasonable care when it knew of the defects of the defective Pentax cameras and failed to replace, repair or recall the defective Pentax cameras that it knew were defective.

50. As a direct and proximate result of Defendant's negligence, Plaintiff and class members bought the defective Pentax cameras without knowledge of their defective nature.

51. As a direct and proximate result of Defendant's negligence, Plaintiff and class members purchased defective products which could not be used for their intended use.

52.   As a direct and proximate result of Defendant's negligence, Plaintiff and class members have suffered damages.

53.   Plaintiff and class members seek to recover the damage caused by Defendant.

Breach of Express Warranty

54.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

55.   Defendant is, and at all times relevant was, a merchant with respect to cameras.

56.   As set forth above, Defendant had knowledge of the defects alleged herein.

57.   Despite that knowledge, at all times relevant, Defendant expressly warranted in writing that its cameras were "warranted by Defendant against manufacturing defects in materials and workmanship."

58.   In its warranty to customers, Defendant also provided a written warranty.

59.   The defective Pentax cameras have exposure problems which make them unfit to take photographs.

60.   Alternatively, the limitations in Defendant's warranty are unconscionable as described herein.

61.   By selling the defective Pentax cameras containing those defects to consumers like Plaintiff and class members after it gained knowledge of the defects, Defendant breached its expressed warranty to provide cameras that were free from defects.

62.   Defendant also breached its express warranty to repair and correct material defects or component malfunctions in its defective Pentax cameras when it failed to do so despite knowledge of the known defects and despite knowledge of alternative designs, alternative materials and options for retrofits.

63.   The limited warranty of repair for the defective Pentax cameras fails in its essential

purpose because the contractual remedy is insufficient to make Plaintiff and class members whole and because Defendant has refused to provide the promised remedies within a reasonable time.

64.    Also, as alleged in more detail herein, at the time Defendant warranted and sold the defective Pentax cameras, it knew that the defective Pentax cameras did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and concealed materials facts regarding its cameras.

65.    Accordingly, Plaintiff and class members are not limited to the limited warranty of "repair," and Plaintiff and class members seek all remedies allowed by law.

66.    As more fully detailed above, Defendant knew that Plaintiff's camera was susceptible to malfunction but failed to provide defect-free cameras to Plaintiff or class members, or to timely provide an adequate retrofit to remedy the defective Pentax cameras.

67.    As more fully detailed above, Defendant was provided with notice, and has been on notice, of the defects and of its breach of express written warranties through its own internal and external testing, as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the defective Pentax cameras, and customer complaints.

68.    Yet, Defendant failed to repair, replace, or retrofit the defective Pentax cameras to ensure they were free of material defects or component malfunctions as Defendant promised.

69.    As a direct and proximate result of Defendant's breach of its express warranty, Plaintiff and class members have suffered damages.

70.    Defendant has been unjustly enriched by keeping the profits from the sale of its defective Pentax cameras while never having to incur the cost of repair.

Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) – Written Warranty

71.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

72.     The subject cameras are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

73.     Plaintiff and the class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

74.     Defendant is a "warrantor" and supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

75.     Defendant provided Plaintiff and class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

76.     In its capacity as warrantor, and by the conduct described herein, any attempts by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Pentax cameras is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Pentax cameras is null and void.

77.     All jurisdictional prerequisites have been satisfied.

78.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Pentax cameras and their action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representation.

79.     As a result of Defendant's breach of express warranties, Plaintiff and class members are entitled to revoke their acceptance of the defective Pentax cameras, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) – Implied Warranty

80.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

81.     Cameras are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

82.   Plaintiff and class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

83.   Defendant is a "warrantor" and supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

84.   Defendant provided Plaintiff and class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

85.   In their capacity as warrantors and by the conduct described herein, any attempt by Defendant to limit the implied warranties in a manner that would exclude coverage of the defective Pentax cameras is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Pentax cameras is void.

86.   All jurisdictional prerequisites have been satisfied herein.

87.   By Defendant's conduct as described herein, including Defendant's knowledge of the defects contained within the defective Pentax cameras and their action, and inaction, in the face of that knowledge, Defendant has failed to comply with their obligations under their written and implied promises, warranties and representations.

88.   As a result of Defendant's breach of implied warranties, Plaintiff and class members are entitled to revoke their acceptance of the defective Pentax cameras , obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

89.   Plaintiff incorporates by reference all preceding paragraphs.

90.   The defective Pentax cameras were defectively designed and manufactured.

91.   The defects were present in the defective Pentax cameras at the point of sale of the cameras which rendered the defective Pentax cameras useless.

92.    At all times relevant hereto Defendant was under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description.

93.    This implied warranty of merchantability is part of the basis for the bargain between Defendant on the one hand, and Plaintiff and class members on the other.

94.    Notwithstanding the aforementioned duty, at the time of delivery, Defendant breached the implied warranty of merchantability in that the defective Pentax cameras were defective, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

95.    Defendant knew or should have known that the defective Pentax cameras are defective and knew or should have known that selling the defective Pentax cameras to Plaintiff and class members constituted a breach of the implied warranty of merchantability.

96.    As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members bought the defective Pentax cameras without knowledge of their defects.

97.    As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members purchased defective products which could not be used for their intended purpose.

98.    As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members have suffered damages and did not receive the benefit of their bargain.

99.    Plaintiff provided or will provide notice to defendant, its agents, representatives,

retailers and their employees.

100.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

101.   Defendant was unjustly enriched by keeping the profits for the defective products while never having to incur the cost of repair, replacement, retrofit, or a recall.

102.   The defectively designed defective Pentax cameras purchased by Plaintiff and all other class members are unfit for their intended and ordinary purposes because they have exposure problems rendering them unfit to take photographs.

103.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, plaintiff and class members have suffered loss.

Fraud

104.   Plaintiff incorporates by reference all preceding paragraphs.

105.   Defendant's fraudulent intent is evinced by knowingly distributing the Products into the market with awareness of the issues described herein.

106.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

107.   Plaintiff incorporates by reference all preceding paragraphs.

108.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

109.   Defendant received proceeds from their sale of the defective Pentax cameras, which were purchased by Plaintiff and class members for an amount far greater than the reasonable value

of such cameras because of such cameras' defects.

110.  In exchange for the purchase price paid by Plaintiff and class members, Defendant provided the defective Pentax cameras that are likely to fail within their useful lives.

111.  Such defects render the defective Pentax cameras unfit for their intended use.

112.  Plaintiff and class members reasonably believed that the defective Pentax cameras would function as advertised and warranted, and did not now, nor could have known, that the defective Pentax cameras contained latent defects at the time of purchase.

113.  Defendant knows of and appreciates the benefit conferred by Plaintiff and class members and has retained that benefit notwithstanding their knowledge that the benefit is unjust.

114.  Under the circumstances, permitting Defendant to retain the proceeds and profits from the sales of the defective Pentax cameras described herein would be unjust.

115.  Hence, Defendant should be required to disgorge this unjust enrichment.

<u>Violation of State Consumer Protection Laws</u>

116.  Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

117.  Defendant's deceptive trade practices in, inter alia, misrepresenting the quality and character of the defective Pentax cameras, and selling the defective Pentax cameras knowing same to be defective, violate the following state consumer statutes:

  a.  The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7) and 27), *et seq*.;

  b.  The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

  c.  The Arizona Consumer Fraud Act, A.R.S. §§ 44-1522;

  d.  The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq*.;

e. The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; and the California Unfair Competition Law, Cal. Bus. And Prof. Code, § 17200, *et seq.*;

f. The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), et seq.;

g. The Connecticut Unfair Trade Practices Act, Conn. Gen, Stat. § 42-110(b), e*t seq.*;

h. The Delaware Consumer Fraud Act, Del. Code. Ann. Title 6 § 2513, *et seq.*;

i. The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), *et seq.*;

j. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*;

k. The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5) and (7), *et seq.*;

l. The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*, and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. §§ 480-2(a), *et seq.*;

m. The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*;

n. The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill, Stat. § 505/2, *et seq.*, and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), *et seq.*;

o. The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*;

p. The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq.*;

q. The Kansas Consumer Protection Act, Kan, Stat. §§ 367.170(1) and (2), *et seq.*;

r. The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), *et seq.*;

s. The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), *et seq.*;

t.  The Main Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), *et seq.*, and the Main Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*

u.  The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*;

v.  The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii) and (iv), (5)(i) and (9)(i), *et seq.*;

w.  The Michigan Consumer Protection Act, M.C.P.L.A. §§ 445.903(1)(c), (e), (s) and (cc), *et seq.*

x.  The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq.*, and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd., *et seq.*

y.  The Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e) and (g), *et seq.*

z.  The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), *et seq.*

aa. The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14—103, *et seq.*

bb.  The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*

cc. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), *et seq.*

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*

ff.  The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5), (7) and (14) and 57-12-3, *et seq.*;

gg. The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh. The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), *et seq.*;

ii.   The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*;

jj.   The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), *et seq.*;

kk.   The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), *et seq.*;

ll.   The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e), (g) and (u), *et seq.*;

mm.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v), (vii) and (xxi), and 201-3, *et seq.*;

nn.   The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*;

oo.   The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5.20(a), *et seq.*;

pp.   The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*;

qq.   The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5) and (7), *et seq.*;

rr.   The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A. Bus. & C §§ 17.46(a), (b)(5) and (7), *et seq.*;

ss.   The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b) and (i), *et seq.*;

tt.   The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*;

uu.   The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, *et seq.*;

vv.   The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5), (6) and (14), *et seq.*;

ww.   The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*;

xx.   The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), *et seq.*

118.  By this cause of action, Plaintiff pleads on behalf of the class violations of all the foregoing consumer and deceptive trade practice laws.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   May 17, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
 /s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533

S.D.N.Y. # SS-2056

Christopher Colt North (PHV Motion to be filed)
The Consumer & Employee Rights Law Firm, P.C.
5629 George Washington Memorial Hwy, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax: (757) 873-8375
*cnorthlaw@aol.com*

1:20-cv-02215
United States District Court
Eastern District of New York

Janet Kyszenia, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Ricoh USA, Inc.,

Defendant

## Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  May 17, 2020

/s/ Spencer Sheehan
Spencer Sheehan