UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                   :

**JANET KYSZENIA, VICTORIA SANDERS**,
and **ELIZABETH GALKOWSKI**, on behalf of
themselves and others similarly situated,       :    **MEMORANDUM DECISION AND**
                                    **ORDER**
                           Plaintiffs,     :
                                      20-CV-2215 (AMD) (VMS)
         – against –                 :

**RICOH USA, INC.,**                         :

                               Defendant.      :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

       Before the Court is the defendant's motion to dismiss the second amended complaint (the

"SAC"), in which the plaintiffs bring claims on behalf of a putative class, alleging violations of

the New York General Business Law §§ 349-50, breach of express and implied warranties,

violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, negligent

misrepresentation, fraud and unjust enrichment.  (ECF No. 17.)  The defendant moved to dismiss

the SAC on March 18, 2021.  (ECF No. 18.)  As explained below, the motion is granted.

## BACKGROUND

       The action arises from alleged defects in cameras manufactured and distributed by the

defendant Ricoh, USA, Inc.  According to the plaintiffs, a line of the defendant's cameras—the

Pentax K-30, Pentax K-50 and Pentax K-70—stop working "at high rates" due to what the SAC

describes as an "aperture problem" or "exposure problem."  (ECF No 17 ¶¶ 3-4, 22.)

       Specifically, the plaintiffs complain that the aperture functions properly when the camera

is first purchased, but deteriorates after about a year, causing photographs to appear "completely

dark" (*id.* ¶ 4), because a part within the aperture—the armature—"contains a smaller amount of

copper than necessary for it to function without incident throughout the normal use-life of the camera and too much alloy." (*Id.* ¶ 32.)  The plaintiffs assert that the apertures of the Pentax cameras, in contrast to that of one of the defendant's competitors, contain too much alloy, and not enough copper, which is "less susceptible [than alloy] to normal deterioration."  (*Id.* ¶¶ 31-33, 35-36.)  Citing customer complaints and posts on the internet (*id.* ¶¶ 44-49), the plaintiffs claim that the defendant knew or should have known about this alleged defect, and failed to disclose it to the plaintiffs and the proposed class.  (*Id.* ¶¶ 50, 72, 92.)

Plaintiff Janet Kyszenia bought a Pentax K-50 from Best Buy in Queens, New York in the summer of 2015.  (*Id.* ¶ 61.)  She experienced the aperture issue described above in 2016, about a year after she purchased it.  (*Id.* ¶ 62.)  Plaintiff Veronica Sanders bought a Pentax K-70 from Best Buy in 2016, and experienced the aperture issue in 2017.  (*Id.* ¶¶ 64-65.)  Unlike Kyszenia and Sanders, who purchased their Pentax cameras, the third named plaintiff—Elizabeth Galkowski—received a Pentax K-50 as gift from someone who bought it in 2018 at B&H Photo in New York, New York.  Galkowski experienced the aperture issue in March of 2019.  (*Id.* ¶¶ 67-69.)  The Pentax cameras that the defendant distributed are covered by a warranty providing that products "purchased through [] authorized channels, are warranted by RICOH IMAGING AMERICAS CORPORATION to the original retail purchaser for a period of one year from date of purchase . . . ."  (*Id.* ¶ 130.)  The one-year warranty "is limited to repair of defects in material and/or workmanship," which "will be made at no charge to the customer." (*Id.*)

The plaintiffs claim that the defendant withheld the fact that it "constructed [the aperture] with lower quality materials that would experience high failure rates within approximately one year of normal usage."  (*Id.* ¶ 92.)  The plaintiffs also claim that the defendant's "post-sale

conduct" was deceptive because the defendant did not replace the aperture parts, even though it knew that the problem would likely arise outside of the one-year warranty period.  (*Id.* ¶ 93.) The plaintiffs allege that the defendant and its customer representatives misled Kyszenia and Sanders by representing that "the issue could be fixed by resetting their cameras or that the camera functioned properly."  (*Id.* ¶ 80.)  According to the plaintiffs, as a result of the defendant's conduct, they "and the putative class have purchased the Products that do not perform as promised" (*id.* ¶ 97), and "have been forced to pay, or will pay, substantial amount of money to repair the defect and the value of the affected cameras has been diminished."  (*Id.* ¶ 98.)

In the SAC, filed in February 2021,[1] the plaintiffs assert claims against the defendant for: (1) deceptive business practices in violation of the New York General Business Law (the "GBL") §§ 349-350; (2) breach of express warranty; (3) breach of implied warranty; (4) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312; (5) negligent misrepresentation; (6) fraud; and (7) unjust enrichment.[2]  On behalf of the plaintiffs and the proposed class,[3] the SAC seeks declaratory relief, injunctive relief, statutory and monetary damages, equitable relief, and other damages, including punitive damages and attorney's fees. (ECF No. 17 at 29-30.)  On March 18, 2021, the defendant moved to dismiss.  (ECF No. 18-3.)

---

[1] The previous iterations of the class action complaint, filed in May and November of 2020, respectively, named Kyszenia as the sole plaintiff.  Following the January 2021 pre-motion conference, the Court gave the plaintiff leave to amend the complaint, which she did on February 16, 2021.  (ECF No. 17.) The SAC added Sanders and Galkowski to the action as named plaintiffs.  (*Id.*)

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the class exceed $5,000,000 and minimal diversity exists between the proposed class members and the defendant. (*Id.* ¶¶ 101-02.)

[3] The SAC defines the putative class as, "All persons who purchased Defendant's Pentax K-30, K-50 or K-70 model cameras in New York from May 17, 2014 through present."  (ECF No. 17 ¶ 108.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).  Although detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Rule 9(b) requires that plaintiffs alleging fraud, as the plaintiffs do here, plead their claims "with particularity," specifying "the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The purpose of Rule 9(b) is to "(1) provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protect[] a defendant from harm to his reputation or goodwill; and (3) reduc[e] the number of strike suits." *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Under this heightened standard, a plaintiff alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013) (citations omitted).  If the claim "is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context

of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). Failure to satisfy the Rule 9(b) standard is grounds for dismissal. *See, e.g., Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006).

## DISCUSSION

### I.  New York General Business Law Sections 349 and 350

The plaintiffs' first cause of action is based on alleged violations of sections 349 and 350 of the New York GBL.  (ECF No. 17 ¶¶ 119-27.)  According to section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" are unlawful.  N.Y. Gen. Bus. Law § 349.  Similarly, section 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." *Id.* § 350.

To state claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).  To establish that conduct was deceptive or misleading under the statute, a plaintiff must plausibly allege that the defendant's conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (defining "deceptive acts, . . . whether representations or omissions," as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances").  Because the standard for recovery under section 350, while specific to false advertising, is "substantively identical" to section 349, Second Circuit courts merge analysis of the two claims. *See Gristede's Foods, Inc. v. Unkechauge*

*Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp.

3d 562 (S.D.N.Y. 2021).  Section 349 and 350 claims are subject to a three-year statute of

limitations.  *See Gristede's Foods*, 532 F. Supp. 2d at 452 (noting that claims pursuant to

sections 349 and 350 are governed by a three-year limitations period set forth in N.Y. C.P.L.R.

§ 214(2)); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184-85 (2012).

 As the plaintiffs acknowledge, their GBL claims are premised on the defendant's alleged

omissions.  (ECF No. 20 at 12-14.)[4]  The SAC alleges that the defendant failed to disclose

information about the aperture defect, and that the plaintiffs and the putative class would not

have purchased their cameras absent this omission, which misled the plaintiffs and was likely to

mislead a reasonable consumer.  (ECF No. 17 ¶¶ 72, 121, 125-26.)

 The defendant argues that plaintiffs' GBL claims must be dismissed because (1) the

three-year statute of limitations bars Kyszenia's and Sanders's claims, and equitable tolling does

not save their claims; (2) the SAC fails to allege deceptive or misleading conduct under an

omissions-based theory, and thus fails to state a claim under section 349 or 350; and (3)

Galkowki, who received her Pentax camera as a gift, fails to allege a cognizable injury under the

GBL.  (ECF No. 18-3 at 6-11.)  I address each argument below.

 **a.**  **Whether the SAC Alleges Actionable Deceptive Conduct Under the GBL**

 The defendant does not contest the first element of a GBL claim—that the conduct at

issue was "consumer-oriented."  *See Orlander*, 802 F.3d at 300.  Except for Galkowski, whose

claim I address in Section I.C, the defendant also does not dispute the third GBL element—

---

[4] During the pre-motion conference, the plaintiffs' counsel confirmed that the GBL claims in the
complaint are premised on the defendant's alleged omissions.  (*See* Jan. 14, 2021 Pre-Motion Conf. Tr.,
ECF No. 18-2 at 7:24-25 (acknowledging that the plaintiffs' claims are "grounded in an omission theory
of misrepresentation").)

whether the plaintiffs suffered an injury as a result of the allegedly deceptive act or practice. *Id.* Instead, the defendant argues that the plaintiffs' allegations about the public discussion of the allegedly defective aperture demonstrate that the information was known publicly, not just by the defendant; the defendant maintains that omission-based claims require a showing that the business alone possesses the relevant information about the defect. (ECF No. 18-3 at 10-11; ECF No. 21 at 6-7.)

In fact, a plaintiff claiming an omission constitutes actionable deception must show either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (requiring a plaintiff to show why an omission is deceptive by alleging that the information omitted "was solely within [the defendant's] possession or that a consumer could not reasonably obtain such information"); *Dimond v. Darden Rests., Inc.*, No. 13-CV-5244, 2014 WL 3377105, at *14 (S.D.N.Y. July 9, 2014) (dismissing a plaintiff's omission-based claim under GBL § 349 where the plaintiff failed to allege facts showing he could not "reasonably obtain" the relevant information); *see also Oswego*, 85 N.Y.2d at 26 (observing that "[the GBL] surely does not require businesses to . . . guarantee that each consumer has all relevant information specific to its situation[,]" but noting that a deceptive practice could be established "where the business alone possesses material information that is relevant to the customer and fails to provide this information").

The SAC alleges adequate detail to state actionable deceptive conduct by omission. While the plaintiffs' allegations about public discussion of the aperture issue (ECF No. 17 ¶¶ 47-51), tend to undercut and render implausible a claim that the defendant alone possessed this information, the absence of that showing is not fatal to the plaintiffs' claims. As discussed

above, an omission can still be actionable where it is shown that "a consumer could not reasonably obtain" the omitted information.  *Pelman*, 237 F. Supp. 2d at 529; *Dimond*, 2014 WL 3377105, at *14.  The fact that there were complaints about the aperture issue on a handful of websites does not show that consumers were entirely capable of discovering the information on their own.

The allegations in the SAC are sufficient to establish that the information was not readily accessible to the plaintiffs.  The SAC alleges that the defendant manufactured the Pentax cameras, (ECF No. 17 ¶ 21), that it knew in 2012 that the apertures were made with materials that would cause it to degrade after a year, (*id.* ¶¶ 51, 86), and "failed to inform Plaintiffs and the members of the class" of the defect.  (*Id.* ¶ 92.)  The SAC further alleges that the defendant continued to withhold information about the defect, and did not advise two of the named plaintiffs that repair was needed.  (*Id.* ¶¶ 79, 80.)  These allegations are distinguishable from those in *Dimond*, where the court found the plaintiff failed to demonstrate that he could not "reasonably obtain" unlisted beverage pricing information because, other than the defendant's decision not to list that information, there was no "indication that Defendants concealed the prices of those beverages or engaged in any other conduct related to the prices."  *Dimond*, 2014 WL 3377105, at *14.

The plaintiffs' allegations support a plausible inference that they could not reasonably obtain information about the aperture defect, and thus the defendant's omission was "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Cf. Dimond*, 2014 WL 3377105, at *14 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)).  Accordingly, the SAC sufficiently alleges that the defendant's conduct was deceptive

under an omission theory, and the defendant's motion to dismiss the GBL claims on that basis is denied.

### b.      Whether Kyszenia's and Sanders's Claims Are Time Barred

The defendant also argues that Kyszenia's and Sanders's GBL claims should be dismissed as untimely.  (ECF No. 18-3 at 13-17.)  There is no dispute that the limitations period for deceptive practices claims is three years.  *See, e.g., Gristede's Foods*, 532 F. Supp. 2d at 452. Nor is there any dispute that Kyszenia's and Sanders's claims are untimely, absent tolling.[5] (ECF No. 20 at 11; ECF No. 21 at 5.)  Instead, the plaintiffs say that principles of equitable estoppel or equitable tolling apply, because the defendant fraudulently concealed its conduct, preventing the plaintiffs from bringing suit earlier.  (ECF No. 17 ¶¶ 74-79; ECF No. 20 at 11-15.)

"[T]he doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks and citation omitted).  A statute of limitations may be tolled because of fraudulent concealment if a plaintiff shows: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks and

---

[5] The plaintiffs concede that Kyszenia's and Sanders's claims accrued in 2015 and 2016, respectively, when they purchased their cameras, because accrual occurs "when plaintiff is injured by the deceptive act or practice that violated the statute." *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012). The plaintiffs also agree that, under ordinary circumstances, Kyszenia and Sanders would have had to file their claims in 2018 and 2019.  (ECF No. 20 at 11.)

citation omitted).  Generally, "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and quotation marks omitted).

 Moreover, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead the elements of fraudulent concealment with particularity.  *See Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-CV-1692, 2012 WL 13202126, at *10 (E.D.N.Y. Apr. 19, 2012).  To comply with Rule 9(b)'s heightened pleading standard in the context of alleging fraudulent concealment, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Milo v. Galante*, No. 09-CV-1389, 2011 WL 1214769, at *5 (D. Conn. Mar. 28, 2011) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)); *see also De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations.").

 The plaintiffs have not sufficiently alleged facts supporting equitable tolling or estoppel based on fraudulent concealment.  According to the SAC, the defendant obscured the nature of the aperture issue by "suggesting remedial measures other than repair," (ECF No. 17 ¶ 78), "assur[ing] Plaintiffs there were no problems with the cameras, when [the defendant] knew this was not true," (*id.* ¶ 79), and, during post-sale interactions, telling Kyszenia and Sanders "that the issue could be fixed by resetting their cameras or that the camera functioned properly," (*id.* ¶ 80).  The SAC alleges that Kyszenia and Sanders became aware of the defect "after they had

used the cameras for various periods of time when they were informed by defendant's customer service that the issue was a faulty aperture which required repair at significant expense." (*Id.* ¶ 85.)

But the SAC contains almost no detail about when and where any of these alleged conversations or assurances took place. Kyszenia's and Sanders's cameras stopped working in 2016 and 2017, (ECF No. 17 ¶¶ 62, 65), more than three years before each filed suit. The SAC does not explain how or why the defendant prevented the plaintiffs from filing before the expiration of the three-year window. Accordingly, there is no way to tell whether the plaintiffs were reasonably diligent in exercising their rights during the statutory period, which is an "essential element" of tolling based on concealment. *See Abbas*, 480 F.3d at 643; *see, e.g., Koch*, 699 F.3d at 157 (fraudulent concealment claim was not plausibly alleged where plaintiff could not assert how defendant's actions prevented the filing of the action).[6] The absence of detail about when and where any of the above interactions occurred makes them inadequate under Rule 9(b), which is an independent basis for rejecting them. *See, e.g., Milo*, 2011 WL 1214769, at *5-6.

The plaintiffs' allegation that they "lack[ed] knowledge of the aperture problem [] due to Defendant's concealment of the issue," (ECF No. 17 ¶ 86), is precisely the "[g]eneralized or conclusory allegation[] of fraudulent concealment [that] [is] not sufficient to toll a statute of

---

[6] The plaintiffs' reliance on *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016) is misplaced. (ECF No. 20 at 11-12.) There, the plaintiff alleged that she noticed a problem with a product in June 2014, became aware of the alleged defect during an inspection in August 2014, and filed within one year of that date. *Argabright*, 201 F. Supp. 3d at 612-13. The court in *Argabright* found the action was timely, after tolling the statute of limitations to August 2014, which is when she became aware of the defect. *Id.* at 613. The plaintiffs here do not specify the date on which they learned that the aperture parts were defective. (*See* ECF No. 17 ¶ 85.) Even if the Court tolled the statute of limitations to the dates on which their cameras started malfunctioning—2016 and 2017, respectively— the SAC does not plausibly explain why it then took them an additional three-plus years to file suit.

limitations," and thus fails on that basis.  *See De Sole*, 974 F. Supp. 2d at 319.  Accordingly, Kyszenia's and Sanders's claims under GBL sections 349 and 350 are dismissed as untimely.

      **c.**      **Whether Galkowski Alleges Injury Under the GBL**

The defendant moves to dismiss Galkowski's claims because she does not allege a cognizable injury under GBL sections 349 and 350.  The defendant argues that because Galkowski received the camera as a gift, she does not establish that she was injured as a result of the defendant's deception, (*see* ECF No. 18-3 at 11-12; ECF No. 21 at 7-8), and that her "disappointed expectations," without more, are insufficient to allege injury within the meaning of the GBL.  (ECF No. 21 at 7.)

To state a claim under the GBL, a plaintiff must allege that she "suffered injury as a result of the allegedly deceptive act or practice."  *Orlander*, 802 F.3d at 300 (citation omitted).  Although a showing of pecuniary harm is not necessary, the plaintiff must allege that the defendant's conduct "'caused . . . actual harm' directly to [the] plaintiff."  *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 628 (3d Dep't 2007) (quoting *Oswego*, 85 N.Y.2d at 26); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (dismissing GBL claims because plaintiffs' theory of injury "contains no manifestation of either pecuniary or 'actual' harm").  Claiming that the plaintiff would not have bought the product absent the defendant's deception is not enough.  *See id.* (plaintiff that "sets forth deception as both act and injury" fails to satisfy requisite injury under the GBL); *Baron*, 42 A.D.3d at 629 (rejecting argument that consumer suffered actual injury within meaning of section 349 where he alleged he bought product he would not have purchased absent seller's deceptive commercial practices).  Rather, "a plaintiff must plead something more than the defendant's deception;" for example, "the price of the product was inflated as a result of the defendant's deception or that use of the product adversely affected

plaintiff's health." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (quoting *Baron*, 42 A.D.3d at 629).

Galkowski's allegations are insufficient.  She does not allege that she suffered any pecuniary losses because of the defendant's conduct, or that the product caused her some other harm.  Rather, her claim is derivative—that the person who gave her the camera would not have purchased it "but for Defendant's materially misleading consumer-oriented conduct."  (ECF No. 20 at 16.)  In other words, she claims that the defendant's conduct deprived her of a defect-free gift.  That is not sufficient for a GBL claim.  *See, e.g., Small*, 94 N.Y.2d at 56 (plaintiff that "sets forth deception as both act and injury" fails to satisfy requisite injury under the GBL).  Her claims must be dismissed.[7]

## II. Breach of Express Warranty

The plaintiffs allege that the defendant breached its one-year limited warranty by selling cameras that "did not perform as promised," and by failing to repair the cameras "to ensure they were free of material defects as [] promised."  (ECF No. 17 ¶¶ 134, 136.)

N.Y. U.C.C. § 2-313 governs express warranties, and provides that the seller can create express warranties by affirmation of fact, promise, description, or sample.  To state a claim for a breach of an express warranty, a plaintiff must plead "that an express warranty existed, was breached, and that plaintiff had relied on that warranty."  *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012).

The defendant argues that the SAC does not state a claim for breach of express warranty because: (1) the plaintiffs do not plausibly allege that they relied on the warranty statement when

---

[7] The parties do not cite any authority on the issue whether gift recipients can ever state a claim under the GBL.  Because Galkowski's allegations are insufficient in any event, I do not address whether, as a matter of law, a gift recipient is entitled to relief under the GBL.

they purchased the cameras; (2) that their claim is based on design defects not covered by the warranty statement, which is limited to "defects in material and/or workmanship;" (3) that they have not alleged that their cameras stopped working during the one-year warranty period; and (4) as to Galkowski, the warranty extends only to "original retail purchasers," which would not cover a gift recipient like her, and because she failed to give requisite notice to the defendant before suing. (ECF No. 18-3 at 19-24.)

The plaintiffs do not allege in the SAC that they relied on the warranty at the time of purchase. The plaintiffs say, however, that their allegation that they "relied upon Defendant's express warranties regarding its specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an unreasonable risk of harm or place an undue burden upon Plaintiffs" is sufficient. (ECF No. 20 at 17 (quoting ECF No. 17 ¶ 133).)

I do not agree. Aside from the vagueness of the alleged "express warranties," the plaintiffs do not allege sufficient facts to satisfy the requirement of reliance. The SAC does not specify where or when the defendant made the claimed assurances, nor any facts showing that the plaintiffs relied on them before they bought their cameras. The plaintiffs' conclusory allegations of reliance are insufficient to state a plausible claim. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018) (dismissing express warranty claim where complaint merely alleged "reliance" on warranties, "without providing any underlying factual details concerning when, where and how such reliance arose"), *adhered to on reconsideration*, No. 18-CV-0334, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019). Because the SAC does not plead facts permitting an inference that the plaintiffs relied on either the written warranty statement, let

alone the unidentified "express warranties" (ECF No. 17 ¶ 130), the plaintiffs' express warranty claim must be dismissed.

The SAC is deficient in another respect, in that it does not allege that the plaintiffs' cameras failed during the one-year warranty period, (*see* ECF No. 17 ¶¶ 61-69); there are thus no facts to support an inference that the warranty was breached during the applicable time period. The plaintiffs do not deny this.  Rather, relying on *Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011), where the court found that a durational limit in the express warranty for a car was unconscionable, *id.* at *10, the plaintiffs assert that the express warranty is unenforceable because limiting the warranty coverage to one year is unconscionable.  But *Szymczak* is a much different case.  There, the plaintiff alleged that the defendant sold him a car knowing that it had a defective radiator, which the defendant knew would not manifest itself until after the express warranty expired.  *Id.*  The plaintiff also alleged that he would have negotiated better sale and warranty terms had he known of the defect when he bought the car, that he had "no meaningful choice about the time limits contained in the warranty," and that there was "a disparity between the parties' bargaining power."  *Id.*  The plaintiffs in this case make no such allegations about the unequal bargaining power between the parties or the absence of meaningful choice regarding the durational terms of the warranty.

Instead, the plaintiffs appear to base their unconscionability claim on the allegations that the defendant knew that the defect would manifest itself after a year.  (*See* ECF No. 20 at 18.)  But courts routinely find that such allegations, standing alone, do not state a plausible claim of unconscionability.  *See Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327, 2015 WL 5686507, at *7 (E.D.N.Y. Sept. 25, 2015) ("The case law is clear . . . that a defendant's knowledge of a latent defect does not render unconscionable a limitation contained in an express warranty.");

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-CV-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) ("[A] manufacturer's mere knowledge that a part will ultimately fail, after the expiration of a warranty period, is insufficient to provide a basis for a breach of express warranty claim.").[8]  Therefore, the plaintiffs' claim for breach of express warranty is dismissed.[9]

**III. Breach of Implied Warranty**

The defendant moves to dismiss the plaintiffs' claim for breach of the implied warranty of merchantability under N.Y. U.C.C. § 2-314, contending that the plaintiffs "did not buy their Cameras directly from Ricoh and thus are not in privity with Ricoh."  (ECF No. 18-3 at 24.) Additionally, the defendant argues that Kyszenia's claim is barred by the governing statute of limitations, and that Galkowski's claim must be dismissed because she did not provide pre-suit notice.  (*Id.* at 18.)

As a general matter, in the absence of privity, New York law does not allow implied warranty claims to proceed when there is no claim for personal injuries.  *See Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012); *Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 363 (W.D.N.Y. 2013); *Adirondack Combustion Tech., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827 (3d Dep't 2005).  Nevertheless, citing the warranty's "original retail purchaser" language, the plaintiffs contend that they were in privity with Ricoh because they were the "intended beneficiaries" of the defendant's written warranty.  (ECF No. 20 at 19.)

---

[8] Even if the SAC included plausible allegations of gross bargaining disparity between the defendant and the plaintiffs, it is unclear whether that would be enough to withstand a motion to dismiss, as at least one court in this district has called *Szymczak* as an "outlier" for that specific reason.  *See Chiarelli*, 2015 WL 5686507, at *7 n.5.

[9] Because I hold that the SAC does not adequately plead multiple requirements of an express warranty claim (that the plaintiffs relied on the warranty terms, and that those terms were breached), I do not address whether the complaint alleges a design defect as opposed to a manufacturing defect, or the defendant's arguments related to Galkowski's claim.  (ECF No. 18-3 at 21-23.)

There is an exception to the general privity rule, which permits implied warranty claims if the plaintiff alleges that she is a third-party beneficiary of a contract to which the defendant is party. *See Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009) (stating claim for breach of implied warranty where purchaser lacked privity with manufacturer, but was a third-party beneficiary of a distribution contract between manufacturer and supplier); *Bristol Vill.*, 916 F. Supp. 2d at 363 (dismissing breach of implied warranty claim where complaint only established plaintiff was incidental beneficiary, not intended third-party beneficiary, of contract). "Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

In my view, the SAC does not allege sufficient facts to satisfy these requirements. While the SAC refers to a warranty statement that extends coverage to an "original retail purchaser" and claims that "Plaintiffs are the intended beneficiaries of Defendant's written warranties," (ECF No. 17 ¶¶ 130, 149), it does not identify any contracts between Ricoh and the authorized distributors of the cameras, let alone facts that would allow the Court to infer that such contracts intended to benefit the plaintiffs.[10] This is insufficient to proceed under a third-party beneficiary theory. *See Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *4-5 (E.D.N.Y.

---

[10] Moreover, there are no allegations that any contracts between Ricoh and its authorized dealers include the warranty statement quoted in the complaint. *See Hyundai Motor Am.*, 51 F. Supp. at 469 (noting in dicta that the presence of "warranty provisions by which Defendant provided coverage for Plaintiffs' vehicles" may suffice to infer contracting intent to benefit plaintiffs, but rejecting third-party beneficiary claim where "no such allegation appears in Plaintiffs' [complaint]").

Sept. 30, 2015) (dismissing third-party beneficiary claim where the "complaint does not cite any contractual provisions in the alleged contracts between [defendant] and its dealerships that indicate plaintiff is a third-party beneficiary of those contracts"); *Bristol Vill.*, 916 F. Supp. at 363 (dismissing third-party beneficiary claim, notwithstanding the existence of an express warranty statement, where there were insufficient allegations about the contract that allegedly benefitted the plaintiff); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 313 (N.D.N.Y. 2019) (dismissing third-party beneficiary claim where the plaintiff "[did] not include[] any factual allegations regarding the contract between Defendant and the authorized dealer, much less any factual allegations plausibly suggesting that the contract was intended to provide a sufficiently immediate benefit to her"). Accordingly, the plaintiffs have not pled that they are third-party beneficiaries of any contract between the defendant and its distributors. The existence of an express warranty does not "create privity for the purposes of a claim for breach of an implied warranty." *Id.* at 310. The defendant's motion to dismiss the implied warranty claims for failure to show privity is granted.[11]

---

[11] Galkowski's and Kyszenia's implied warranty claims fail for independent reasons. Galkowski does not allege facts demonstrating that she gave the defendant notice of her claims, which is a prerequisite for the assertion of a breach of warranty claim under New York law. *See* N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014). Kyszenia's claim must be dismissed as time-barred under the applicable four-year statute of limitations. *See Fernandez v. Cent-Mine Equip. Co.*, 670 F. Supp. 2d 178, 189 (E.D.N.Y. 2009); *Marshall v. I-Flow, LLC*, No. 12-CV-721, 2012 WL 3241237, at *3 (N.D.N.Y. Aug. 7, 2012) ("The rule in New York is that a breach of implied warranty claim must be commenced within four years from the date the defendant tendered delivery of the product."). Because Kyszenia alleges that she bought the camera in 2015, (ECF No. 17 ¶ 61), and did not bring suit until 2020, her implied warranty claim is untimely. Nor is Kyszenia's claim subject to equitable tolling, for the same reasons that her GBL claims are not. (*See supra* Section I.B.)

## IV. Magnuson-Moss Warranty Act

The defendant argues that the plaintiffs do not state a plausible claim under the Magnuson-Moss Warranty Act (the "MMWA") because the plaintiffs' express and implied warranty claims fail. (ECF No. 18-3 at 25.) The viability of the plaintiffs' MMWA claims depends on the disposition of the express and implied warranty claims under state law. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) ("The MMWA, however, creates no additional bases for liability, but allows a consumer to recover damages under existing state law.").

Because the plaintiffs do not adequately allege express warranty claims, their MMWA claims for violations of a written warranty are dismissed. Similarly, the plaintiffs' MMWA claims for violations of an implied warranty are also dismissed.

## V. Negligent Misrepresentation

The defendant next argues that the plaintiffs' claim of negligent misrepresentation is barred by New York's economic loss doctrine. (ECF No. 18-3 at 26-27.) The defendant also argues that the claim should be dismissed for failure to allege the requisite element of a special or privity-like relationship with Ricoh. (*Id.* at 27-28.)

To allege negligent misrepresentation under New York law, the plaintiff must show (1) the existence of a special or privity-like relationship imposing a duty on the defendant to give the plaintiff correct information; (2) that the information was incorrect; and (3) reasonable reliance on the information. *See Ginsburg Dev. Cos., LLC v. Carbone*, 134 A.D.3d 890, 894 (2d Dep't 2015). "To allege a special relationship, [the plaintiff] must establish something beyond an ordinary arm's length transaction." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). In order to find that reliance on the representation is justified, there must be a "closer degree of trust

between the parties than that of the ordinary buyer and seller[.]" *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003); *see also Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) ("[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.").

Under the economic loss doctrine, New York does not permit tort recovery for damages caused by a product that fails to perform as promised because of negligence or product defect. *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 205 (E.D.N.Y. 2010); *see also Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Int'l Corp.*, 300 A.D.2d 1051, 1052 (4th Dep't 2002) ("[A] plaintiff may not recover in tort against a manufacturer for economic loss that is contractually based, whether due to injury to the product itself or consequential losses flowing therefrom." (internal quotation marks omitted)). "The rationale behind the economic loss doctrine is that economic losses resulting from a defective product are best treated under the law of contracts, not tort." *Shema*, 832 F. Supp. 2d at 205.

The plaintiffs claim that they suffered "economic losses and other general and specific damages, including . . . the amounts paid for Products, other consequential loses [sic] and any interest that would have been accrued on all those monies, the specific amount to be determined at trial." (ECF No. 17 ¶ 194.) They assert that "[t]hey would not have paid money, paid less money or purchased an alternative product." (*Id.* ¶ 189.) The plaintiffs assert only economic harms or consequential damages from the alleged defect in the Pentax cameras, which is insufficient under the economic loss doctrine. *See Shema*, 832 F. Supp. 2d at 206 (barring tort claims under economic loss doctrine where plaintiff sought consequential damages "flow[ing] directly from the alleged defects in defendant's software"); *Manhattanville Coll. v. James John*

*Romeo Consulting Eng'r, P.C.*, 28 A.D.3d 613, 616 (2d Dep't 2006) (barring tort recovery against manufacturer of product where "plaintiff seeks to recover damages for purely economic loss resulting from the failure or malfunction of a product, such as the cost of replacing or retrofitting the product, or for damage to the product itself").  Accordingly, the economic loss doctrine bars the plaintiffs' negligent misrepresentation cause of action, unless the plaintiffs can satisfy an exception to the doctrine.  They have not established any such exception.

The plaintiffs say that there is "a limited exception to the economic loss doctrine where there was either actual privity of contract between the parties or a close relationship that approximates privity."  (ECF No. 20 at 20.)  But there is no such relationship here.

The plaintiffs bought their cameras from third-party retailers, and have neither alleged a direct contractual relationship with Ricoh, nor a "close relationship that approximates privity." The cases upon which the plaintiffs rely do not support their claim.  In *Pilkington N.A., Inc. v. Mitsui Sumitomo Inc. Co. of America*, the plaintiff and insurance broker had a longstanding relationship; the broker recommended that the plaintiff choose certain policy options, which triggered special broker-client duties under New York law.  *See* 420 F. Supp. 3d 123, 139-40 (S.D.N.Y. 2019).  No such special relationship exists in this case.  The other cases that the plaintiffs cite are no more helpful to the plaintiffs' claim; the plaintiffs' remaining cases address situations where a plaintiff, without necessarily alleging a special relationship, can state a claim for negligent misrepresentation if it demonstrates (1) that the person making the representations possessed special knowledge and expertise, and (2) that the person intended that the plaintiff would rely on those representations.  *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996); *Suez v. Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017).  These cases do not address

exceptions to the economic loss doctrine and are thus inapplicable.[12]  The plaintiffs have not alleged a special relationship with the defendant.

Accordingly, the plaintiffs' negligent misrepresentation claims are dismissed.

## VI. Fraud

To plead a claim for fraud, the plaintiff must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).  Under New York law, omissions are actionable as a basis for claims of fraud "only if the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995).  In addition, fraud-based claims must be pled with particularity under Federal Rule of Civil Procedure 9(b), which requires that the plaintiff, "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).

---

[12] In any event, the plaintiffs have not pled sufficient facts to establish either of the two factors stated in *Kimmell*.  The plaintiffs contend that Ricoh is "a leader in its field," (ECF No. 20 at 21), and point to an allegation in the SAC under the express warranty section that says Ricoh had "specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an unreasonable risk of harm or place an undue burden upon Plaintiffs."  (ECF No. 17 ¶ 133.) This is not sufficient, and does not address Ricoh's specialized knowledge as to the aperture defect at issue in this case.  Nor does the SAC allege facts to establish the second *Kimmell* factor.  The defendant's "mere[] knowledge of the particulars of the company's business [does] not constitute the type of specialized knowledge that is required in order to impose a duty of care." *Gerber Prods. Co.*, 262 F. Supp. 3d at 76 (internal quotation marks omitted).

The plaintiffs' fraud claim is based on allegedly fraudulent omissions by the defendant. (*See* ECF No. 20 at 22.)  Thus, the plaintiffs argue that the defendant omitted information about the use of "lower quality material in the aperture," and "assured Plaintiffs there were no problems with the cameras, when it knew this was not true."  (*Id.* (quoting ECF No. 17 ¶ 79); *see also* ECF No. 17 ¶ 72 ("The deceptive practice is the use of lower quality materials in the manufacture of the aperture parts and Defendant's failure to disclose same.").)  In addition, the SAC includes allegations about the defendant's and its customer service representatives' post-sale activities—specifically, about misleading Sanders and Kyszenia by "t[elling] [them] that the issue could be fixed by resetting their cameras or that the camera functioned properly."  (*Id.* ¶ 80.)

The plaintiffs do not address the defendant's argument about the SAC's failure to allege that Ricoh had a duty to disclose information to the plaintiffs about the aperture issue, which is a requirement for omission-based fraud claims.  *See Remington*, 68 F.3d at 1483; *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993) ("Proof of fraud requires a showing of either an affirmative misrepresentation of a material fact, or an omission of a material fact coupled with a duty of disclosure." (citation omitted)).  A duty to disclose arises "where the parties enjoy a fiduciary relationship" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 296 (2d Cir. 2006).  The absence of a factual basis for the claim that the defendant had a duty to disclose warrants dismissal of the plaintiffs' omission-based fraud claim.[13]

---

[13] Even if the plaintiffs had pled plausible a fraud claim, these allegations are conclusory.  They do not specify when and where the alleged omissions were made, who failed to disclose the information, or how the omissions misled the plaintiffs.

## VII.    Unjust Enrichment

Last, the plaintiffs assert a claim for unjust enrichment.  (ECF No. 17 ¶¶ 203-08.)[14]  The plaintiffs' unjust enrichment claim is based on the same factual allegations underlying the plaintiffs' tort and warranty claims, and thus impermissibly duplicative of them.  *See Silva v. Hornwell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *6 (E.D.N.Y. Aug. 10, 2020) (finding unjust enrichment claim unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim"); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013)  ("It is well settled that where a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in quasi-contract, and it is appropriate to dismiss an unjust enrichment claim."); *Marshall*, 51 F. Supp. 3d at 471-72 (dismissing unjust enrichment claim, even pled in the alternative, where it was duplicative of plaintiff's claim for breach of warranty). The plaintiffs' unjust enrichment claim is therefore dismissed.

## VIII.   Standing to Seek Injunctive Relief

To the extent that the plaintiffs still seeks injunctive relief, I find they have not demonstrated that they are likely to be injured by the defendant's conduct in the future, and thus have no standing to seek an injunction.[15]

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  "This limitation is effectuated through the requirement of standing."  *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009).

---

[14] At the pre-motion conference, counsel said the plaintiffs were withdrawing this claim.  (*See* Jan. 14, 2021 Pre-Motion Conf. Tr., ECF No. 18-2 at 8:15-20.)

[15] The plaintiffs' counsel represented at the pre-motion conference that the plaintiffs would remove their request for injunctive relief.  (*See* Jan. 14, 2021 Pre-Motion Conf. Tr., ECF No. 18-2 at 8:21-9:2 ("THE COURT: . . . it doesn't really seem like your client has standing to pursue any injunctive relief and you don't really request any, can that go also?  MR. SHEEHAN:  Yes, Your Honor.").)  Nevertheless, the SAC requests "any and all injunctive relief the Court deems appropriate."  (ECF No. 17 at 29.)

Standing is "the threshold question in every federal case," and determines "the power of the court to entertain the suit." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999).  To establish constitutional standing, a plaintiff must prove: "(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013).

The plaintiffs argue they have standing to seek injunctive relief because of their "inability to rely on labels and representations in the future," (ECF No. 20 at 23), which they say is a threat of harm, (*id.*).  There are multiple reasons to reject this reasoning.  First, the plaintiffs' theory of standing is undercut by allegations in the SAC that the plaintiffs would not purchase the Pentax cameras again unless the defendant assured them that the aperture issue was fixed.  (*See* ECF No. 17 ¶ 99.)  Second, the plaintiffs rely on *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015), which other courts have found to be inconsistent with Article III, as well as Supreme Court and Second Circuit case law.  *See, e.g., Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018); *Silva v. Hornell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020).  The plaintiffs also cite *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016), which follows *Belfiore*'s reasoning.

As the defendant argues, past harm resulting from an allegedly defective product is insufficient, by itself, to confer standing for injunctive relief.  *See Davis*, 297 F. Supp. 3d at 338 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *Lyons*, 461 U.S. at 102)).  To the extent that Ricoh deceived the plaintiffs, the existence

of this lawsuit shows that the plaintiffs are now aware of the product's alleged defects.  (*See* ECF No. 17 ¶ 85 (alleging that Sanders and Kyszenia are now aware of the aperture defect)).  It is difficult to see how the plaintiffs could fall prey to the same deception a second time.  *See Davis*, 297 F. Supp. 3d at 338 (noting that "[b]ecause a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them," so they have no standing to seek injunctive relief (internal quotation marks omitted)); *cf. Berni v. Barilla S.P.A.*, 964 F.3d 141, 149 (2d Cir. 2020) (Rule 23(b)(2) class of past purchasers of a product lacked standing to seek an injunction where, because they suffered the harm of a deceptive product once, they were not inclined to do so in the future).  For these reasons, the plaintiffs have no standing to pursue injunctive relief.

## IX.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The plaintiffs have had two opportunities to amend their complaint.  The plaintiffs filed the SAC with the Court's permission, after the pre-motion conference on January 14, 2021, where the parties discussed issues in their pre-motion letters.  (*See* ECF Nos. 15, 16.)  The plaintiffs had notice of deficiencies in their pleadings, particularly with respect to the claims for unjust enrichment, fraud, negligent misrepresentation, breach of an express warranty, and breach

of an implied warranty.  The SAC does not address these deficiencies, which is a basis to deny leave to amend.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the [amended complaint] by the defendants and given a chance to amend their [amended complaint]," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).

Although the defendant did not raise the statute of limitations defense as to the plaintiffs' GBL claims in its pre-motion letter, the Court raised the issue at the pre-motion conference, alerting the plaintiffs to the issue.[16]  While the plaintiffs included new allegations in the SAC that the defendant fraudulently concealed the defect in an effort to avoid the statute of limitations, (*see* ECF No. 17 ¶¶ 74-80), for reasons explained above at Section I.B., the plaintiffs' allegations of fraudulent concealment are conclusory and improperly pled, which suggests that further amendment would be futile.  Accordingly, I decline to grant the plaintiffs leave to amend the claims that have been dismissed pursuant to this order.

---

[16] "THE COURT: Well, let just ask the plaintiff, because this is not, at least not in this iteration of the complaint, when did [Kyszenia] buy it and where? . . . MR. SHEEHAN: Yes. She bought it in, I think it was 2016, I think it was 2016 or 2017.  I believe it was within the – well, I'm pretty sure in the statute of limitations and I believe it was at Best Buy, but I will have to confirm that now. . . .  I believe it was within the statute of limitations for the general business law claims of three years."  (Jan. 14, 2021 Pre-Motion Conf. Tr., ECF No. 18-2 at 5:24-6:13.)

## CONCLUSION

For these reasons, I grant the defendant's motion to dismiss the SAC.  The plaintiffs'

GBL §§ 349 and 350, express warranty, implied warranty, MMWA, negligent misrepresentation,

fraud, and unjust enrichment claims are dismissed with prejudice.


**SO ORDERED.**

                                                s/Ann M. Donnelly
                              _____
                              ANN M. DONNELLY
                              United States District Judge


Dated: Brooklyn, New York
           February 3, 2022